OSCN Found Document:FARLEY v. CITY OF CLAREMORE

 

 
 

 
 FARLEY v. CITY OF CLAREMORE
2020 OK 30
Case Number: 115400
Decided: 05/05/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 30, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

SHELLI FARLEY, individually and as surviving spouse of JASON FARLEY, deceased, Plaintiff/Appellant,
v.
CITY OF CLAREMORE, OKLAHOMA, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY

Â¶0 Surviving spouse of a former fireman for the City of Claremore filed a petition in the District Court of Rogers County against the City of Claremore. Surviving spouse sought damages for wrongful death and an injunction against the City of Claremore. The City of Claremore filed a motion to dismiss seeking dismissal of the action with prejudice. The Honorable Sheila A. Condren, District Judge, granted the motion to dismiss and the surviving spouse appealed. The appeal was retained for disposition by the Oklahoma Supreme Court. We hold: (1) A tort action seeking damages for a surviving spouse, surviving child, and parents of a deceased adult child does not survive in a 12 O.S. Â§ 1053 wrongful death action when: (a) Statutes provide an exclusive worker's compensation remedy for survivors which is substituted for a wrongful death action; and (b) The decedent's employer possesses governmental tort claim sovereign immunity barring a tort action for damages at the time of decedent's death; (2) The brother of the deceased did not possess a section 1053 claim for loss of companionship; and (3) Plaintiff lacked standing to seek injunctive relief.

DISTRICT COURT ORDER DISMISSING ACTION WITH PREJUDICE AFFIRMED

Steven R. Hickman, Frasier, Frasier & Hickman, L.L.P., Tulsa, Oklahoma, for Plaintiff/Appellant.

Andrew W. Lester, Courtney D. Powell, Spencer Fane L.L.P., Edmond, Oklahoma, for Defendant/Appellee.

EDMONDSON, J.

Â¶1 Plaintiff, a surviving spouse, successfully obtained a death benefits award in the Workers' Compensation Commission. She then brought a District Court action for damages alleging the death of her spouse was caused by negligence and an intentional tort committed by her spouse's employer who is a local government entity. She argued her action was also for the benefit of her surviving child, as well as the surviving parents and brother of the deceased. We conclude: A tort action for damages suffered by a surviving spouse, surviving child, and parents of a deceased adult child does not survive for the purpose of a 12 O.S. Â§ 1053 wrongful death action when: (a) The wrongful death action arises from an injury compensable by an exclusive workers' compensation remedy and the tort action is brought against the employer of the deceased; and (b) The employer possesses governmental tort claim sovereign immunity. The wrongful death injury was adjudicated and compensated by a successful workers' compensation claim after the death of the decedent. This successful adjudication demonstrates the decedent's injury was exclusively before the Commission and not cognizable as a District Court claim at the time of decedent's death. The parents' action for loss of companionship damages was extinguished at the time of decedent's death and did not survive. We hold the local government entity possessed sovereign immunity because the governmental tort claim against the City was for liability for an injury properly compensated by a claim before the Workers' Compensation Commission. The brother of the deceased did not possess a wrongful death Â§ 1053 action for loss of consortium. We also conclude plaintiff lacked standing to seek injunctive relief. We affirm the District Court's dismissal of the petition with prejudice.

I. Trial Court Proceedings and Issues Raised

Â¶2 Plaintiff, Shelli Farley, is the surviving spouse of Jason Farley, a former fireman for the City of Claremore who died while responding to an emergency request for assistance during a flash flood in Claremore, Oklahoma. Shelli Farley (Farley) brought an action in the District Court of Rogers County against the City of Claremore (the City) both in an individual capacity and as representative of Jason's estate and alleged an entitlement to damages flowing from Jason's death based upon theories of negligence and intentional tort.[1] In addition to seeking wrongful death damages pursuant to Oklahoma's Government Tort Claims Act (OGTCA), she sought an injunction against the City to require the City to comply with an alleged national standard for operation and training of the City's personnel who perform emergency swift water rescues. Her petition expressly states she has been damaged by medical and funeral expenses for Jason.[2]

Â¶3 The City filed a special entry of appearance with a motion to dismiss. Attached to the motion to dismiss is an order of the Workers' Compensation Commission awarding death benefits to Shelli ten months prior to her commencing her District Court action. The appearance and motion relied on 12 O.S. Â§2005.2(A)(entry of appearance does not waive Â§ 2012 defenses); 12 O.S. Â§2012(B)(1)(lack of jurisdiction over the subject matter) and 12 O.S. Â§ 2012(B)(6)(failure to state a claim upon which relief may be granted). The City argued the following in its motion:

(1) Workers' Compensation remedy was the sole remedy for plaintiff,[3] and plaintiff had previously and successfully pursued that remedy and was seeking a double recovery;
(2) Plaintiff's claims are barred by 51 O.S. Â§ 155(14) of the OGTCA,[4] and
(3) Plaintiff's claims are barred by 51 O.S. Â§ 155(6) of the OGTCA;[5]
(4) Plaintiff's claims are barred by 11 O.S. Â§ 29-108;[6]
(5) Plaintiff's claims are barred by 51 O.S. Â§ 155(5) of the OGTCA;[7]
(6) Plaintiff's claims are barred by 51 O.S. Â§ 155(4) of the OGTCA;[8] and
(7) Plaintiff lacks standing to seek injunctive relief, and plaintiff's request is beyond the scope of an injunction because an order requiring municipal adoption of a specific standard for water rescues is an attempt to make the City create a "legislative decision."

The City's motion has an attached exhibit showing a prior workers' compensation award of death benefits to Shelli and Jason Farley's minor child.

Â¶4 Shelli Farley, as surviving spouse and mother of the deceased's minor child, sought and obtained workers' compensation death benefits for the death of Jason. The amount awarded to Farley was a lump sum ($100,000.00) plus $571.55 per week (backdated and continuing).[9] The amount awarded to the surviving minor child was a lump sum ($25,000.00) to be paid into an interest bearing account with Farley as guardian until the child is 18 years of age, and a weekly benefit of $122.48.[10]

Â¶5 The Commission's Order states funeral expenses were already paid pursuant to 85A O.S. Â§ 47 at the time of the workers' compensation award.[11] The award is dated ten months prior to filing Farley's District Court petition action also seeking funeral expenses. Costs were awarded against the City in the Order. The City did not contest Farley seeking workers' compensation benefits. The City stipulated to the facts relating to Jason's employment, his wages, his death as compensable by the Commission, the City's insurance coverage, and the identities of Shelli as surviving spouse and their child as a surviving minor child. No one appeared for either the City or insurance carrier at the hearing before the Commission. The Commission heard testimony from Farley prior to entering the award. The order of the Workers' Compensation Commission is dated July 31, 2015, approximately ten months before May 2016 when Farley brought her action in the District Court of Rogers County against the City.

Â¶6 Farley responded to the City's motion to dismiss with "Plaintiffs' Opposition to Defendant's Motion to Dismiss with Prejudice and Supporting Brief." She did not contest or otherwise challenge the fact she had previously sought and obtained a workers' compensation award for the death of Jason. Farley argued the following in her response:

(1) Workers' Compensation remedy is not the exclusive remedy because the parents and brother of the deceased, Jason, do not have a remedy with the Workers' Compensation Commission remedy. Further, plaintiff's petition alleges grief and loss suffered by the brother and parents of the deceased spouse.

(2) Plaintiff's claim is not barred by the OGTCA because the City has an obligation to maintain the water drainage system for the City. Section 155(5) of the OGTCA does not bar the claim because the City's actions were ministerial and/or operation as opposed to discretionary.

(3) Plaintiff has standing to seek an injunction because she is a resident of the City and has a personal stake in the outcome of the firefighters being correctly trained for a swift water rescue.

Â¶7 The City filed a Reply to plaintiff's response which included the following arguments:

1. City of Claremore was immune from liability because Farley had pursued and obtained a worker's compensation remedy.

2. Shelli Farley had obtained a workers' compensation award and the OGTCA confers immunity when the loss is covered by workers' compensation. [citing 51 O.S. Â§ 155(14).

3. The parents and brother of the deceased, Jason, do not have a wrongful death remedy.

4. The City is immune pursuant to Â§ 155(4) and Â§ 155(6).

5. Farley lacks standing to obtain an injunction.

Â¶8 The trial court granted the motion to dismiss with prejudice. The District Court's order includes the following.

After reviewing the filings and hearing the arguments of counsel, the Court finds that when all of the facts alleged are taken as true and inference appropriate drawn, there is no set of facts which would entitle plaintiff to the relief she seeks.

The District Court's order did not state which of the several grounds raised by the City were sufficient for dismissing plaintiff's action.

Â¶9 Farley appealed the trial court's order and this Court retained the appeal. Her petition in error has three assignments of error on appeal.

1. She states the District Court granted defendant's motion because the deceased was "a person covered by the Workers' Compensation Act." However, the District Court erred because the Petition alleged death as a result of an "intentional tort" and the trial court failed to address plaintiff's constitutional claims relating to how 85A O.S. Â§ 5 defines an intentional tort.
2. The City is not exempt from liability pursuant to the OGTCA Â§ 155(5) because the City failed to maintain a drainage system it had previously installed.
3. "The District Court [erred] in granting dismissal, per the submissions of the parties."

Â¶10 Farley's appeal is prosecuted pursuant to Rule 1.36 which provides for the trial court filings to serve as the appellate briefs and the assignments of error on appeal are those listed in an appellant's petition in error.[12] Farley's arguments in her trial court filings which serve as her Rule 1.36 appellate briefs are as follows.

(1) Workers' Compensation remedy is not the exclusive remedy because the parents and brother of the deceased, Jason, do not have a remedy with the Workers' Compensation Commission remedy;
(2) Farley's claim is not barred by the OGTCA because the City has an obligation to maintain the water drainage system for the City, and Â§ 155(5) of the OGTCA does not bar her claim because the City's actions were ministerial as opposed to discretionary; and
(3) Farley has standing to seek an injunction because she is a resident of the City and has a personal stake in the outcome of the firefighters being correctly trained for a swift water rescue.

II. Appellate Review

Â¶11 The City filed a motion to dismiss which included alleged jurisdictional defenses based upon two arguments: On plaintiff's claim for damages, an argument based on the Governmental Tort Claims Act combined with a final order awarding compensation benefits on allegedly the same cause of action pled in District Court; On plaintiff's claim for injunctive relief, a jurisdictional bar based upon plaintiff's alleged lack of standing. The City's motion to dismiss argued Farley had already received compensation from the Worker's Compensation Commission and the Commission had exclusive jurisdiction over Farley's claims. The City argued judicial notice may be taken of the proceedings before the Workers' Compensation Commission and the public record before the Commission.[13] A copy of the award to Farley and her child was attached to the City's motion to dismiss. The City argued the motion to dismiss should not be converted to summary judgment.

Â¶12 A motion to dismiss based upon a jurisdictional ground and 12 O.S. Â§ 2012(B)(1) is not converted to a motion for summary judgment by reliance upon facts not appearing on the face of a plaintiff's petition.[14] However, a jurisdictional fact not appearing on the face of the petition and used in support of a 12 O.S. Â§ 2012(B)(6) failure-to-state-a claim defense will convert the motion to one for summary judgment. The City's motion raised both Â§ 2012(B)(1) and Â§ 2012(B)(6). The City's motion relied upon the fact of Farley's successful workers' compensation award to show a governmental tort immunity as well as a collateral estoppel (no double recovery) defense to Farley's action for damages based upon an alleged intentional tort.

Â¶13 In federal court, judicial notice of fact may occur when the fact is not subject to reasonable dispute and it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[15] The Oklahoma statute has similar language.[16] Some federal courts have stated a court may take judicial notice of an indisputably accurate fact[17] on the world wide web (or internet),[18] and public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies may be used for the purpose of judicial notice.[19] Some federal courts have also concluded public agency actions, factfinding, and decisions may be appropriate for judicial notice.[20] A motion to dismiss in federal court based upon Fed.R.Civ.P.12(b)(6) tests the sufficiency of a plaintiff's federal complaint, and the court examines the face of the complaint as well as (1) documents incorporated by reference, (2) documents referenced in the complaint central to plaintiff's claim when the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice.[21] A Rule 12(b)(6) motion may raise a res judicata affirmative defense using facts known by judicial notice without requiring the defense to be raised by answer or converting the motion to summary judgment.[22]

Â¶14 Concerning the City's estoppel defense based upon a single-recovery rule, sometimes the question whether prior litigation creates a preclusion to additional litigation may be a question of law.[23] A question of law may be decided in the trial court on a motion to dismiss as well as a motion for summary judgment. In Wilson v. State Election Bd.,[24] we explained the standard of review with the following:

A determination of whether the preclusion doctrine applies is solely a question of law if "(1) the facts are undisputed, (2) the preclusion question can be answered solely by reviewing the judgment put forward as the bar, or (3) the preclusion determination can be made solely by inspection of the record of the proceeding(s) culminating in the judgment put forward as the bar." Feightner v. Bank of Okla., 2003 OK 20, Â¶ 3, 65 P.3d 624, 627 (citations omitted). Here the application of the preclusion doctrine is a question of law because the determination can be made solely by de novo review of the record on appeal and consideration of this Court's opinion in Wilson I. Id.

Wilson, 2012 OK 2, Â¶ 5, 270 P.3d at 157.

Farley did not challenge the fact of a prior workers' compensation recovery for death benefits, and we may review the City's Â§ 2012(b)(6) estoppel argument and its particular application herein using the appellate standard for reviewing a Â§ 2012 (B)(6) motion as we now explain.

Â¶15 The City also stated it was challenging the subject matter jurisdiction of the trial court by a Â§ 2012(B)(1) motion, and the City relied on (1) the Oklahoma Governmental Tort Claim Act (OGTCA, 51 O.S.2011 Â§ 151-171), and (2) 11 O.S.2011 Â§ 29-108 [25] which provides a statutory immunity for tort liability in certain circumstances.[26] The City's argument rests upon certain implied conclusions of law: (1) Sovereign tort immunity is equated with a Â§ 2012(B)(1) subject matter jurisdiction defense, and (2) Provisions of the OGTCA are a collection of mandatory statutes with strict-compliance requirements for the purpose of subject matter jurisdiction; and (3) A plaintiff's OGTCA cause of action, or claim upon which relief may be granted, contains elements which must be pled to show the presence of subject matter jurisdiction; and (4) An OGTCA defendant may by motion to dismiss invoke extra-pleading facts relating to proper application of the OGTCA without converting the motion to one for summary judgment.

Â¶16 Generally, sovereign tort immunity includes attributes which are consistent and inconsistent with principles of subject matter jurisdiction.[27] There is no doubt some language in the OGTCA refers to jurisdictional requirements.[28] We have recently observed jurisdictional requirements are often expressed as mandatory or strict-compliance duties, and some mandatory statutory obligations may have attributes authorizing a substantial rather than mandatory compliance.[29] Our Court of Civil Appeals has reviewed a plaintiff's failure to comply with the OGTCA in the context of a Â§ 2012(B)(6) motion.[30] The City asserts governmental tort sovereign immunity as a jurisdictional defense without (1) legal authority discussing attributes of immunity relating to jurisdictional issues, or (2) legal authority or discussion on the nature of facts in support the City's jurisdiction/immunity argument, e.g., jurisdictional facts, quasi jurisdictional facts, and facts necessary to plaintiff's cause of action and whether any of these are jurisdictional.[31]

Â¶17 We need not analyze sovereign immunity and its relation to subject matter jurisdiction issues raised by the City. An order granting a motion to dismiss raising a jurisdictional issue is reviewed de novo and allegations of a petition are deemed as true[32] similar to review of a Â§ 2012(B)(6) motion to dismiss.[33] We note federal courts have allowed facts appropriately subject to judicial notice to be considered for certain purposes when adjudicating a similar Fed. R. Civ. Pro., Rule 12(b)(6) motion without converting the motion to one for summary judgment.[34] We also note the City's motion used the exhibit of the Commission's order for the purpose of showing a final order of the Workers' Compensation Commission, and at the hearing on the motion the City argued that plaintiff "had been compensated under that [Workers' Compensation] act."[35] Farley did not challenge in either the trial court or this Court by assigned error the City's use of the Commission's order.[36] The Commission's order is before us as part of a record on appeal and it was before the trial judge when the City's motion was decided.

Â¶18 A determination of jurisdiction based upon the legal effect of a document recognized as accurate by all parties presents a question of law.[37] Further, this Court has explained judicial notice should have been taken of a plaintiff's unopposed status as personal representative of a decedent's estate when that status was revealed by a document accompanying a defendant's response brief on summary judgment.[38] The document attached to the City's motion identifies Farley's status relating to a successful workers' compensation proceeding for death benefits and the award to Farley and her minor child. Farley did not dispute the statements in the document or the procedure used to present it to the District Court. We review the District Court's order de novo to determine if an error of law occurred.

Â¶19 A long-recognized rule is that when a judgment is general in its terms and does not disclose which of several grounds it is based upon, it will not be reversed on appeal if any one of the grounds raised in the trial court is a valid basis for the judgment.[39] Exceptions to this general rule do not apply in the present controversy.[40] This rule that only one legally valid basis is needed for a judgment or judicial decision applies to appellate review of a trial court's order sustaining a motion to dismiss as well as the correctness of a decision on an appellate motion to dismiss filed in the Oklahoma Supreme Court.[41] Consistent with this principle is our explanation that "a legally correct nisi prius judgment must be affirmed although it was anchored to a theory different from that on which it comes to be tested on appellate review" when the different theory is adequately supported by the record.[42]

Â¶20 In an appeal controlled by Okla. Sup. Ct. R. 1.36 the briefs in the appellate court are those which were considered by the trial court when it issued the order reviewed in the 1.36 appeal. City of Claremore's combined motion to dismiss and brief (as well as Reply) in the trial court are this party's appellate briefs and each of its briefed defenses is raised in this appeal.[43] An appellee may raise a legal issue in support of the correctness of the trial court's judgment and the relief actually granted when the issue is supported by the record on appeal.[44] Clearly, an issue is before us on appeal when an appellee argues on appeal the specific issues and associated facts previously submitted to the trial court to consider and those issues and facts are subsequently preserved in the appellate record.[45] We need not review all issues raised by appellee, merely those which are dispositive of Farley's assignments of error in the appeal.

III. Plaintiff's District Court Tort Action For Personal Injury Damages Subsequent
To Successful Workers' Compensation Award For The Same Personal Injury

III (A). Single-Injury Rule and Workers' Compensation

Â¶21 The City's argument combines (1) the fact that Farley successfully obtained a workers' compensation award against the City for death benefits with (2) our 1979 opinion in Pryse Monument Co. v. District Court,[46] and (3) our 2003 opinion in Gladstone v. Bartlesville Independent School Dist. No. 30 (I-30).[47] This argument raises both res judicata (Pryse) and statutory sovereign immunity issues (Gladstone).

Â¶22 Our 2013 opinion in Holley v. Ace American Ins. Co.,[48] explained Pryse involved a "prior incarnation" of the workers' compensation statutes, those statutes allowed an injured employee in certain circumstances to elect between pursuing an action in tort in the District Court or a workers' compensation remedy, and a plaintiff's choice of one remedy would bar subsequent use of other remedy.[49]

Â 
Waiver by election will preclude the claimant from vexing the employer with a second suit. Once a remedy is chosen and then pursued to conclusion, the point of no return is reached although there has been no satisfaction, much less vindication, of the right. Three essential elements, all present here, must coincide to make preclusion through waiver by prior election of remedies applicable: (a) two or more remedies must be in existence (b) the available remedies must be inconsistent (c) choice of one remedy and its pursuit to conclusion must be made with knowledge of alternatives that are available....

Holley, 313 P.3d at 923-924, 2013 OK 88 at Â¶ 8, quoting Pryse, 595 P.2d at 437.

Election of remedies doctrine is based upon the actual existence or availability of two or more remedies.[50] However, the City's argument is not that Farley had two remedies to elect from as discussed in Pryse. Instead, Farley was (1) required to use her sole and only remedy in workers' compensation law, and (2) when she pursued this remedy and obtained a compensation award then the award had the effect of barring a subsequent District Court action as discussed in Pryse. Our opinions and the City's argument recognize the underlying theory in our cases involving successive workers' compensation and District Court proceedings based upon the same injury is analyzing whether an estoppel has been created as opposed to applying the common-law doctrine of election of remedies.[51]

Â¶23 The particular application of this estoppel argument raised by the City herein is: The single-injury-single-recovery rule which creates an estoppel shows a "single injury" at the time of Jason's Farley's death. This is so because the injury was legally cognizable before the Workers' Compensation Commission at the time of death, and a cognizable claim before the Commission excludes a negligence and intentional tort District Court action. The cognizable claim before the Commission shows that a governmental tort claim sovereign immunity and a workers' compensation exclusive remedy statutes must have applied to Jason Farley's claim at the time of his death. This application is then used to show the District Court negligence and intentional tort claim was extinguished at the time of Jason Farley's death and wrongful death action did not survive. This extinguishment is shown to also extinguish the wrongful death claims/damages of the wrongful death statutory beneficiaries.

Â¶24 In Dyke v. Saint Francis Hosp. Inc.,[52] the Court stated the rule in Pryse "in essence erects a res judicata bar," and precludes a party using a workers' compensation remedy and a District Court remedy to recover for the same on-the-job injury.[53] Res judicata is identified with claim preclusion and ordinarily applied when a claim in a second suit is the same as the claim adjudicated on the merits and to finality in the first proceeding.[54] Although a workers' compensation claim has been historically described with attributes[55] which are different from the elements of negligence and intentional tort claims in a District Court, we have treated a final adjudicated worker's compensation claim awarding benefits as creating a bar to a District Court tort proceeding against an employer for the same injury because the findings necessary to award workers' compensation have a preclusive effect similar to issue preclusion.

Â¶25 In Howard v. Duncan,[56] an injured employee obtained a worker's compensation award and then brought a tort suit in a District Court for the same injury. She alleged her District Court action was proper because the State Industrial Commission lacked jurisdiction to make the award she received. We noted the general rules relating to collateral attacks.[57] We observed the State Industrial Commission held a hearing on the worker's claim, received evidence, and a finding of fact was made sustaining the worker's right to an award. We observed the Commission's jurisdiction was exclusive.[58] We directed the District Court to dismiss plaintiff's action. Howard v. Duncan, is consistent with our explanation that a final workers' compensation order awarding benefits is not subject to a collateral attack before the Commission,[59] as well as the rule stating that doctrines of res judicata and collateral estoppel apply to a final administrative determination which is adjudicatory in nature.[60]

Â¶26 The defendant in Howard relied upon a workers' compensation statute making plaintiff's remedy exclusive before the Commission, and the City of Claremore relies upon exclusivity language in 85A O.S. Â§ 5.[61] This exclusivity of the workers' compensation remedy means the employee relinquishes a common-law right to bring an action in District Court against his or her employer in exchange for the employer securing statutory compensation for employees with injuries.[62]

Â¶27 The Workers' Compensation Commission possesses the authority to adjudicate questions of law and fact related to application of workers' compensation law to a particular party before the Commission.[63] The Commission's application of workers' compensation law to the facts before it includes making specific findings when hearing a claim.[64] The preclusive force of a workers' compensation award in a subsequent District Court action rests on a finding of an accidental injury by the Worker's Compensation Commission relating to the same injury raised by theories of negligence or an intentional tort in District Court. A finding whether an injury arose out of and in the course of employment as a result of an accident has been construed as a finding and issue of fact when the parties do not agree on facts, and an issue of law when the parties do agree on the facts.[65] On the other hand, when a workers' compensation order determined an injury did not arise out of and in the course of employment and there was no workers' compensation coverage or remedy, this finding did not bar a subsequent District Court action for damages on the same injury.[66] Preclusion doctrines will apply to bar relitigation when a party in a subsequent District Court tort action alleges a former Workers' Compensation Commission's findings on its record were factually incorrect and the Commission lacked jurisdiction.[67]

Â¶28 The parties agree that on May 23, 2015, Captain Jason Farley, a fireman for the City of Claremore, died while responding to an emergency request for assistance to help people trapped in a flash flood. The law in effect on that date determines whether the Workers' Compensation Commission possessed jurisdiction to award of benefits,[68] and this date is also used to determine the law in effect at the time of a decedent's death in a wrongful death action.[69] A compensable workers' compensation injury must be an "accident" and "unintended."[70] Historically, an "accident" for workers' compensation law was required for liability and generally excluded injury caused by a person's intentional tort.[71] As Wells v. Oklahoma Roofing & Sheet Metal, L.L.C.,[72] explains, a remedy for an injury caused by an intentional tort by an employer lies in a District Court, but an "accidental" harm or injury arising from negligence is provided for by the workers' compensation statutes.

Â¶29 On May 23, 2015, 85A O.S.Supp.2014 Â§ 5, was in effect and stated that the rights granted by the Administrative Worker's Compensation Act were "exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer...." On that date 85A O.S.Supp.2014 Â§ 3 was in effect and stated the Administrative Worker's Compensation Act applied to "claims for injuries and death based on accidents."[73] A compensable injury by the Commission included damage or harm to an employee's body as a result of an accident arising out of the course and scope of employment.[74]

Â¶30 The Commission made express findings Farley was an employee of the City, died as a consequence of a compensable work-related incident, the Commission had jurisdiction to award workers' compensation benefits, and both the surviving spouse and surviving minor child were entitled to death benefits pursuant to 85A O.S. Â§ 47. Generally, the accidental nature of an injury compensable by a workers' compensation remedy excludes the possibility that this same injury is simultaneously an "intentional tort"[75] injury caused by an employer. Generally, res judicata and collateral estoppel apply to jurisdictional questions,[76] and to a final and express adjudication of an issue properly before an administrative body that is subsequently raised between the same parties or their privies.[77] The preclusive effect of a final adjudication includes a final determination before the Workers' Compensation Commission.[78] This final adjudication includes a determination an injury is compensable because it resulted from an accident. Claim preclusion, collateral estoppel, applies when the claim in the second suit is the same as in the first suit.[79] The Commission determined Farley died from an accidental injury covered by Workers' Compensation. An adjudication of the accidental nature of an employee's death precludes a subsequent District Court action collaterally attacking the accidental nature of the injury and alleging it arose from a intentional tort outside the jurisdictional scope of an award by the Workers' Compensation Commission. This award shows that Jason Farley had a workers' compensation claim for an accidental injury at the time of his death, and this claim was subject to the exclusive remedy provided by the workers' compensation statutes.

III (B). Farley's Response to the City's Use of an Estoppel Argument

Â¶31 Farley maintains she may bring a District Court action for damages alleging an employer's negligence and intentional tort causing the death of an employee although a workers' compensation death benefits award was issued prior to the District Court action.

Â¶32 Addressing her arguments, we explain: (1) The preclusive effect of a workers' compensation award on a subsequent District Court action is based upon a definition for a cause of action tied to identification of the injury or harm suffered; (2) The wrongful death statutes (12 O.S. Â§Â§ 1051, 1053) have authorized damages based upon the decedent's claim not being extinguished at death; (3) The death-benefits remedy in workers' compensation is a substitute for the wrongful death action, and (4) A cognizable workers' compensation death-benefits award of compensation available at the time of a decedent's death bars a subsequent tort action for the same injury against the employee's employer.

Â¶33 Historically, the scope of a workers' compensation remedy was based on an employee's accidental injury regardless of the employer's degree of negligence, or even without the employer's negligence; but the accidental nature of the injury meant that an intentional injury caused by an employer was not within the scope of workers' compensation remedies.[80] There have been exceptions where an employer could be exposed to potential liability in a workers' compensation or a District Court tort proceeding. For example, when an employer acted in more than one capacity, a status or capacity in addition to employer status.[81] However, this dual-capacity doctrine was abrogated with respect to employers by the recently enacted Administrative Workers' Compensation Act in effect prior to Jason Farley's death.[82] Further, the formerly effective dual-capacity doctrine did not negate an estoppel, either claim or issue preclusion, when raised as a bar to a double recovery for the same injury.[83]

Â¶34 The City of Claremore was found in the workers' compensation proceeding to be the employer of Jason Farley. The District Court petition names the City of Claremore as the sole defendant. The petition alleges negligence and states the City failed to maintain a storm drain at a specific location, previously removed a safety grate over a specific drain pipe, and failed to give Jason Farley and other fireman proper training for swift water rescues. These allegations invoke the status of the City as an employer as well as the City's non-employer role in maintaining safe drainage structures for the benefit of the public. This latter issue raises whether the City has sovereign immunity in this context.

Â¶35 An employer has a duty to provide a safe workplace for employees.[84] We have explained in the context of the dual-capacity doctrine that when the employer's negligence causing a lack of safety is so inextricably bound to the employer's status and duty as an employer, then the employee's remedy for an injury flowing from employer's negligence is workers' compensation. [85] One reason for this is the general rule that an injury from an employer's negligent failure to provide a safe working environment is addressed by the workers' compensation remedy.[86] Historically, an employee gave up the right to bring a negligence action against his or her employer in exchange for the statutory no-fault worker's compensation remedy.[87] In the present context, the City's argument is that Jason Farley, as an employee, had no survivable negligence or tort claim action which could serve as a basis for a wrongful death action after his death.

Â¶36 We have applied the concept of "accidental" to an employee's injury consistent with the injury being caused by an employer's negligent conduct, and noted a District Court action based on an employer's negligence was barred by the exclusivity of a workers' compensation remedy.[88] Further, we recently noted a District Court's grant of summary judgment to an employer in a wrongful death action was proper when the employer had been previously ordered to pay death benefits by the Workers' Compensation Court of Existing Claims.[89]

Â¶37 Farley attempts to escape this estoppel and prohibition on a double recovery by characterizing her two theories of recovery as (a) negligence, and (b) intentional (substantial-certainty) tort authorized by a wrongful death statute, 12 O.S. Â§ 1053. She also alleges a separate cause of action seeking injunctive relief not barred by a previous monetary award against the employer. Farley's argument relating to negligence and intentional tort indicate she has a particular section 1053 wrongful-death-action status that makes the workers' compensation remedy inadequate and allows her to bring a tort action for wrongful-death damages.

Â¶38 Farley's wrongful-death claims for damages based upon (1) injury to her deceased husband, and (2) injuries to her, Jason's surviving child, and surviving parents are based on the statutes authorizing the survival of a tort action in the form of wrongful-death actions, 12 O.S Â§ 1051 and Â§ 1053. An injury to decedent's person, such as pain and suffering, is based on 12 O.S. Â§ 1051.[90] An injury resulting from the death of the person and inuring to the benefit of the surviving spouse, surviving children, surviving parents, if any, or the decedent's next of kin is pursuant to 12 O.S. Â§ 1053.[91] Both 1051 and 1053 are based upon the same alleged wrongful death with the damages recognized in the two statutes being different, although an estoppel may be created if a plaintiff tries to litigate the 1051 and 1053 actions as separate actions.[92]

Â¶39 As we now explain, the difference between 1051 and 1053 does not help Farley's argument because (1) the parents and brother have no survivable 1053 action, and (2) the workers' compensation death-benefits remedy for a surviving, spouse, children, and dependents is designed as a substitute for a wrongful death action based on 12 O.S. Â§Â§ 1051 and 1053.

Â¶40 Plaintiff argues Jason Farley's parents and brother have no remedy in workers' compensation, and the District Court action for wrongful death was proper as to them as non-named parties represented by Farley in the District Court. They assert they possess a legally cognizable interest in the litigation and the estate of the deceased.

Â¶41 The 1971 version of 12 O.S. Â§ 1053 contained no language for "loss of consortium,"[93] and damages sought by parents of a deceased were limited to "pecuniary loss" they suffered.[94] Traditionally, the wrongful-death damages were limited to pecuniary benefits specified by statute; and there was no recovery permitted a parent for injury to feelings, mental anguish, loss of society and companionship or destruction of the parent-child relationship.[95] Section 1053 was amended in 1978 to include loss of consortium by the surviving spouse.[96] A 1979 amendment[97] to section 1053 provided for "loss of consortium of the surviving spouse," as well as "loss of companionship and grief of the children and parents of the deceased."[98] Our 1983 opinion in Clark v. Jones,[99] recognized these changes when we explained surviving siblings of the deceased could not bring an action for loss of consortium. We explained any right of survivors to bring an action and the nature of damages allowed are based upon the wrongful death statutes.[100] The statutory language recognizing the surviving spouse's loss of consortium and the loss of companionship suffered by children and parents has remained unchanged and is the same in its current codification at 12 O.S.2011 Â§ 1053. No express language appears in Â§ 1053 providing for loss of companionship or loss of consortium by a sibling. Jason Farley's brother has no section 1053 action for his for loss of companionship or loss of consortium.

Â¶42 In 1983, Gaither By and Through Chalfin v. City of Tulsa,[101] we explained wrongful-death actions were unknown at common law, and any right of action surviving the decedent existed solely because of statutory enactment.[102] When the Legislature enacted in a wrongful death statute new damages which had not been available for the wrongful death action, then a new "substantive right" was created. In our 1977 opinion, Thomas v. Cumberland,[103] we explained a parent had been limited by 12 O.S. Â§ 1053 to the pecuniary value of the services provided by a child, then recently enacted 12 O.S.Supp.1975 Â§ 1055[104] had created a new "substantive right" in a wrongful death action for a parent to recover for loss of companionship and love of a minor child and for destruction of the parent-child relationship.[105] We repeated this concept in our 1996 opinion in Roach v. Jimmy D. Enterprises, Ltd.,[106] where we explained sections 1053 and 1055 should be read together so that damages based upon the wrongful death of a minor child authorized in section 1055 would include, when appropriate, punitive damages authorized by section 1053.[107] We further explained these rights to specific damages were substantive rights and the law at the time of injury was applicable.[108] Our opinions in Clark (1983), Gaither (1983), Thomas (1977), and Roach (1996) demonstrate that when the Legislature amended the wrongful death statutes it created substantive rights possessed by a parent for damages based upon the wrongful death of the parent's child.

Â¶43 Our 1994 opinion in Ouellette v. State Farm Mut. Auto. Ins. Co.,[109] involved a legal action by parents based upon the death of their child. Their child had a surviving spouse and surviving children. We explained the wrongful death statutes provided a remedy for a surviving spouse and surviving children, and if neither of these (spouse and surviving children) existed, then those who possessed status as statutory next of kin could bring the wrongful death action.

. . . because wrongful death is not actionable absent a statute, the parents' quest for the damages they seek . . . must accord with the legislative wrongful-death recovery regime . . . A wrongful-death claim may be pressed only by persons authorized to bring it . . . if the decedent leave a surviving spouse and a child or children, the parents may not take as next of kin, . . they take as next of kin if the decedent leave neither issue nor a surviving spouse . . . .

Ouellette, 1994 OK 79, 918 P.2d at 1366-1367, material omitted.

In Ouellette we explained a wrongful-death claim may be brought by persons authorized by statute, e.g., the personal representative of the decedent and if none has been appointed, then by the widow, or where there is no widow, by the decedent's next of kin, with recovery inuring to the exclusive benefit of the surviving spouse and children, if any, or next of kin. We observed this language addressed the parties eligible to sue in a wrongful death action, and was intended to address an administrative concern, the multiplicity of suits.[110] Farley does not address the effect of Ouellette on the status of Jason Farley's parents or brother and the nature of their interest, if any, in the estate of Jason as defined by 84 O.S. Â§ 213 and in the context of a surviving spouse and a surviving child.[111]

Â¶44 The wrongful death cause of action pursuant to 12 O.S. Â§ 1053 created or authorized a survivable cause of action with damages recovered by a surviving parent.[112] Section 1053 defines the action as authorized when certain conditions are met, including (1) a wrongful death and (2) if the deceased had a judicially cognizable claim to maintain if living.

A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission. The action must be commenced within two (2) years.

12 O.S.2011 Â§ 1053(A) (emphasis added).

Our 1992 opinion in Riley v. Brown and Root, Inc.,[113] expressly stated the section 1053 action is derivative in the sense that survivors' rights are based upon the rights of the decedent, and we relied on our opinions in Haws v. Luethje,[114] and Hill v. Graham,[115] when we stated the following:

But Section 1053 provides now, as it has always provided, for an action of wrongful death only if the decedent might have maintained an action if he or she had lived. The rights of the survivors are derivative. Haws, 503 P.2d at 874. The survivors have no more and no less rights than did the decedent. "... [A]ny right of action thus granted by the statute is predicated solely upon the right of action which was personal to the deceased had he lived." Hill v. Graham, 424 P.2d 35, 37--38 (Okla.1967).

Riley, 836 P.2d at 1301 (emphasis in original).

Our 2014 opinion in Boler v. Security Health Care, L.L.C.,[116] explained the action authorized by section 1053 was not "wholly derivative" in the sense the cause of action must not have been extinguished before the death of the decedent.[117] The statutory language in Â§ 1053(A) still continues in force and effect and a parent's action for wrongful death damages arising from loss of companionship is derived from a legal right which was possessed by decedent and which was legally cognizable, e.g., not extinguished.[118] Further, because wrongful-death actions were unknown at common law and any right of action surviving the decedent exists solely because of statutory enactment,[119] we must construe section 1053 in harmony with the Workers' Compensation statutes and the sovereign immunity statutes to obtain a result consistent with the plain meaning of all of the statutes and the intent plainly expressed by the Legislature.[120]

Â¶45 Jason Farley's theoretical negligence and intentional tort theories could not have been maintained in a District Court action by Jason Farley; i.e., the theories could not be a basis for stating a claim upon which relief may be granted. This is so because his common-law tort rights were extinguished by operation of law. They were extinguished by: (1) A statute which operated upon Jason Farley's circumstances to make his tort claim cognizable solely as a substituted workers' compensation claim before the Workers' Compensation Commission, and (2) A sovereign immunity statute which barred his District Court action; and (3) A statute which removed the dual-capacity doctrine as an available remedy for him against his employer. Jason Farley had no common-law tort claim when he died and no loss of consortium damages were cognizable at that time.[121] The single-recovery-for-single-injury rule shows that Jason Farley's potential or theoretical tort claim for damages at the time of his death was based upon the same injury or cause of action used for a workers' compensation claim. The successful workers' compensation proceeding occurred after his death but in combination with the relevant statutes does show he possessed at the time of his death an exclusive worker's compensation remedy against an entity possessing a governmental tort claim sovereign immunity as explained herein.

Â¶46 Historically, the right to workers' compensation death benefits was statutorily created to be consistent with 12 O.S. Â§ 1053 and 84 O.S. Â§ 213,[122] and the workers' compensation death benefits were treated as an exclusive statutory remedy substituted for the statutory wrongful death action guaranteed by an Oklahoma constitutional provision and approved by a vote of the People in Oklahoma.[123] For example, in Gaasch, Estate of Gaasch v. St. Paul Fire and Marine Insurance Company,[124] plaintiff's petition stated a "wrongful death"claim against an insurer, and further characterized the cause of action as both an action on a contract and a "bad faith" tort claim where an insurer failed to provide medical care as ordered by the Oklahoma Workers' Compensation Court. We noted the exclusive available remedy in the workers' compensation statutes for the particular wrongful conduct giving rise to the alleged injury, and we affirmed the District Court's summary judgment for the insurer.[125] When the workers' compensation statutes provide an exclusive remedy for an alleged wrongful conduct, this is the remedy which must be pursued.

Â¶47 Farley also argues Parret v. UNICCO Serv. Co.,[126] and Wells v. Oklahoma Roofing & Sheet Metal, L.L.C.,[127] save her action from dismissal. Farley's argument against dismissal relies upon characterizing the employer's conduct as negligent or intentional and thereby demonstrating a cause of action in District Court which is distinct from a worker's compensation remedy. Wells explained (1) the common law divides personal injuries between accidental versus willful or intended, (2) the workers' compensation statutes provide a remedy for accidental injuries but a remedy for willful or intended injuries lies in a District Court, and (3) an intentional injury includes those injuries which an employer possessed knowledge that an injury was substantially certain to result.[128] Wells did not recognize multiple causes of action for the same wrongful death or injury. We did not approve the concept that an injured employee possessed one cause of action with a workers' compensation remedy, three actions based upon each degree of negligence,[129] and one action based upon an intentional tort. Similarly, Parret's explanation of the substantially-certain intentional tort did not authorize a subsequent District Court action against an employer after a claimant's successful workers' compensation proceeding. Characterizing a party's degree of negligence or intentional conduct is generally understood as an assessment on a continuum of culpability or tort liability[130] and not creating different causes of action for the same injury.

Â¶48 Generally, a cause of action is defined by a "transaction or occurrence" and multiple theories of liability do not turn a single cause of action into multiple causes of action. In summary, no matter how many theories of liability appear to arise from a single harm, they all arise from the same or single transaction or occurrence.[131] Wells determined an injured employee could bring an action in District Court against an employer based upon the employer's intentional conduct as shown by the substantial-certainty standard. Wells did not authorize double or multiple recovery for the same injury.

Â¶49 Oklahoma has used for certain purposes the "single or indivisible injury" rule for identifying a cause of action. For example, the rule has been used in the context of multiple tortfeasors.[132] More on point, our 1913 opinion in Shawnee Gas & Electric Co. v. Motesenbocker[133] stated with respect to the cause of action for wrongful death provided by statute:

The statute contemplated only one action. No case has been cited or found in which it was held that the cause of action for wrongful death could be divided or damages for the same death could be sued for in separate actions by the various individuals who had sustained damages thereby. The rule is the other way.

Shawnee Gas, 138 P. at 792.

This language was cited by our Court of Appeals in 1992 explaining why the mother and father of their deceased child could not bring separate wrongful death actions,[134] and again in 1994 in a Court of Civil Appeals' opinion this Court approved for precedential publication.[135] We have also explained that the "same death" could not be used by multiple individuals in separately filed actions by those who had allegedly sustained damages. For example, we explained a wrongful death action is purely statutory, can only be brought by a person expressly authorized by statute, and "there is only one cause of action."[136] Historically, a workers' compensation remedy applied to a type of injury, one arising out of and in the course of employment, and in our case with the injury of death authorizing statutory damages to a surviving spouse and dependent children. Further, wrongful death statutes also applied to a particular type of injury, i.e., death, and provided damages recoverable by the statutory beneficiaries. Viewing the workers' compensation death-benefits remedy as a "same claim" substitute for the wrongful death cause of action is reasonable and supported by our precedent.

Â¶50 We have held in certain instances when formal barriers prevent full presentation of remedies or theories of relief in one action, a party is not precluded from bringing another claim in a subsequent action which arose out of the same set of facts as the first action.[137] However, when a successful workers' compensation adjudicated claim is followed by a District Court action seeking damages against an employer for the same injury, our opinions have been closer, although not identical, to the Restatement of the Law (Second), Judgments, Â§ 24, and its prohibition on splitting a claim. One comment to Â§ 24 includes the following language:

The rule stated in this Section as to splitting a claim is applicable although the first action is brought in a court which has no jurisdiction to give a judgment for more than a designated amount. When the plaintiff brings an action in such a court and recovers judgment for the maximum amount which the court can award, he is precluded from thereafter maintaining an action for the balance of his claim. . . It is assumed here that a court was available to the plaintiff in the same system of courts--say a court of general jurisdiction in the same state--where he could have sued for the entire amount.

Restatement (Second) of Judgments, Â§ 24, cmt. g. (material omitted).

Farley's suit is an assertion she may obtain a full and complete recovery against the City by an action in an Oklahoma District Court for an intentional tort which is not within the remedial jurisdiction of the Workers' Compensation Commission. Farley made a choice to prosecute her claim before the Workers' Compensation Commission as a workers' compensation claim. Again, a basic concept from Pryse and its progeny is that a successfully obtained workers' compensation remedy erects a bar or estoppel preventing a District Court tort recovery for the same injury against the same employer.[138] Farley's success before the Commission shows Jason Farley possessed a legally cognizable workers' compensation claim as an exclusive remedy, and Farley's District Court petition is not saved from dismissal by characterizing her District Court action as alleging negligence or intentional conduct torts which survived Jason Farley's death in a wrongful death action.

Â¶51 In summary: When an alleged wrongful death is used to obtain a death benefits award by the Workers' Compensation Commission against an employer and the surviving spouse and minor child of the deceased receive an award; then this wrongful death may not be a basis for a statutory wrongful death action in a District Court against the same employer for that same injury alleging negligence or intentional conduct by the employer causing the death of the deceased. Further, because the decedent had no cognizable tort claim against his employer at the time of his death, no tort claim survived for the basis of loss of companionship or loss of consortium damages pursuant to 12 O.S. Â§ 1053.

III (C). Sovereign Immunity and Plaintiff's Governmental Tort Claim

Â¶52 Farley argues her petition should not be dismissed because it alleges an action pursuant to the Oklahoma Governmental Tort Claim Act (OGTCA, 51 O.S.2011 Â§ 151-171) against the City of Claremore. Farley alleged the City failed to perform reasonable maintenance to a drain pipe and drainage safety grate. Farley invoked the City's status as both an employer and the dual-capacity doctrine with the City acting as a governmental entity for her OGTCA claim. She relied on Teeter v. City of Edmond,[139] where we distinguished between a city's discretionary acts where no tort liability was attached and ministerial or operational acts which were not exempt from tort liability.[140]

Â¶53 The City countered it was immune pursuant to the OGTCA. The OGTCA is the exclusive remedy to recover against a governmental entity in tort.[141] Governmental immunity of a subdivision of the State is waived only to the extent and in the manner provided in the OGTCA.[142] Section 155(14) of the OGTCA states: "The state or a political subdivision shall not be liable if a loss or claim results from: . . . (14) Any loss to any person covered by any workers' compensation act or any employer's liability act;...." 51 O.S.Supp.2013 Â§ 155(14).

Â¶54 In Smith v. State ex rel. Dept. of Transportation,[143] we explained a 1988 amendment to the Oklahoma Governmental Tort Claims Act extended the State's immunity to claims covered by a workers' compensation act, and that such immunity did not violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U. S. Constitution.[144] We re-examined section 155(14) in Gladstone v. Bartlesville Independent School Dist. No. 30 (I-30),[145] where a wrongful death claim was brought and challenged the constitutionality of section 155 (14). We noted "the state and political subdivisions are not liable for injuries to tort claimants who stand covered by the workers' compensation regime," and we concluded the immunity did not violate due process or equal protection principles.[146] The surviving spouse had received statutory workers' compensation benefits and this Court affirmed the District Court's summary judgment to the employer of the deceased, although the Court noted our Court of Civil Appeals had previously concluded in a different case that success with an alternative remedy was not required for imposition of the section 155(14) immunity.[147]

Â¶55 Farley's argument asks us to construe ministerial or operational acts of the City in maintaining the drainage pipe and drainage gate as an exception to cases such as Gladstone. In Moran v. Del City we explained the "maintenance" duties by a governmental entity used as a basis of tort liability cannot be negated by an incorrect and broad OGTCA exemption from liability not intended to address cases where those duties arise.[148] Farley asks us to construe an OGTCA exemption from sovereign immunity (maintenance of drainage structures by the City) as applying to a tort claim against an employer/governmental entity. Generally, a governmental entity is immune unless the Legislature has expressly waived the immunity.[149] We must construe the OGTCA as part of a consistent whole.[150] Considering the demise of the dual capacity doctrine, it is reasonable to construe Â§ 155(14) consistent with that demise instead of construing it as suggested by Farley. We rejected Farley's argument in Gladstone.

Â¶56 We hold: the City of Claremore has Â§ 155(14) immunity for a statutory wrongful death action in District Court brought by a surviving spouse against the City as the former employer of the deceased when the same wrongful death injury was the basis of an award for death benefits made by the Workers' Compensation Commission to the surviving spouse and surviving minor child.

Â¶57 In summary: (1) The issue whether Farley possessed a workers' compensation remedy has been answered by her success before the Workers' Compensation Commission with its findings of record. (2) This success is based upon a finding the injury was accidental and within the jurisdiction of the Workers' Compensation Commission, as opposed to an intentional-tort injury outside the jurisdiction of the Commission. (3) The dual-capacity doctrine was abrogated with respect to employers by the recently enacted Administrative Workers' Compensation Act. (4) The express immunity in Â§ 155(14) includes any OGTCA claim subject to a workers' compensation remedy. (5) Any negligence or intentional tort claim brought by Farley was barred by OGTCA and the exclusive workers' compensation remedy at the time of Jason Farley's death. (6) The parents and brother of Jason Farley have no 12 O.S. Â§ 1053 wrongful death claim against Jason Farley's former employer, the City of Claremore. The District Court committed no legal error when it dismissed Farley's claims for damages.

IV. Injunctive Relief and Standing

Â¶58 Farley's petition states her former husband and other firefighters rescued a woman and six small children from water caused by a flash flood. She alleges the fire fighters did not have a "formal training program supporting swift water rescue" at the time of Jason Farley's death in May 2015. She alleges Jason Farley drowned due to inadequate training. She alleges the area where Jason Farley died is known to flood.

Â¶59 Farley alleged the City's Fire Department "claims to follow NFPA standards." She states she is seeking a temporary and permanent injunction to compel the City "to comply with the training standards set forth in NFPA [National Fire Protection Association] 1670" Standards on Operation and Training for Technical Search and Rescue Incidents. Farley alleges the City did not institute a rescue policy for swift water rescues until June 2015, held its first class for a swift water rescue in July 2015, and then an addendum regarding unseen hazards was issued in October 2015. She alleges that by January 2016 the fire fighters had not received any swift water rescue training "beyond an introductory lecture."

Â¶60 The City's motion challenged Farley's standing and personal stake in the training of firefighters, and argued an injunction requiring to adopt a training standard was infringing on a legislative decision by the City and improper for an injunction. Farley responded she possessed a personal stake because of her husband's death. She also stated an injunction "would ensure that all citizens of Claremore, including plaintiff herself, can be safely rescued in the event of another flash flood or similar such water event," and her personal residence "is within only a few blocks of a Zone A flood zone." Further, "The only way to ensure that individuals such as plaintiff will be safe during future flooding events, which are sure to occur given the City's drainage system and geographic location, is to require that the City's fire fighters are properly trained in swift water rescue."

Â¶61 A mandatory injunction is an extraordinary remedial process and seeks relief in the form of commanding the performance of a positive act, such as requiring a public official to enforce law by a plaintiff's request for an injunction in the nature of mandamus.[151] Farley does not seek an injunction to compel the City to adopt a standard. Farley alleges the City and its officials have failed to enforce a standard it adopted after the death of her husband.

Â¶62 Federal court standing has been explained with the following: "'The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"[152] When a plaintiff seeks an injunction against an official policy, plaintiff must "credibly allege" a realistic threat to the plaintiff from the policy.[153] The alleged injury must be actual or imminent and fairly traceable to the challenged action.[154] The concept of imminence cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for the purpose of standing, e.g., the injury is certainly impending.[155] The High Court has "repeatedly reiterated" that "certainly impending" is necessary to show an "injury in fact" and allegations of "possible future injury" are not sufficient to show stranding.[156]

Â¶63 Some of this federal-court language discussing a party's standing to request an injunction is expressed in similar forms by several opinions of this Court when explaining (1) elements a plaintiff must prove to obtain an injunction, and (2) allegations in a petition necessary to show standing for equitable relief. We have explained in the contexts of requests for both preliminary and permanent injunctions that the injury of the plaintiff must not be nominal, theoretical or speculative.[157] Further, this injury or threat of injury shown by a party must be based upon a "reasonable probability" of its occurrence.

It is not sufficient ground for injunction that the injurious acts may possibly be committed or that injury may possibly result from the acts sought to be prevented; but there must be at least a reasonable probability that the injury will be done if no injunction is granted, and not a mere fear or apprehension of same.

Sunray Oil Co. v. Cortez Oil Co., 1941 OK 77, 112 P.2d 792, 796, quoting Simons v. Fahnestock, 1938 OK 264, 78 P.2d 388 (syllabus by the Court).

The conduct of the officials Farley seeks to enjoin must be acts which upon their performance will cause irreparable injury to legal rights of Farley which are cognizable in equity.[158] In Independent School Dist. No. 9 of Tulsa Cnty. v.Glass,[159] we explained allegations of injury necessary to show standing for equitable relief could be challenged by a motion to dismiss which did not test the merits of the elements of proof necessary to obtain injunctive relief.

Before a litigant possesses standing as a proper party to seek injunctive relief, it must be alleged that: the challenged action has caused him/her injury in fact; the relief sought would remedy the injury; and, the interest sought to be protected is within the zone of interest to be protected or regulated by the statute in question. For purposes of ruling on a motion to dismiss for lack of standing, the trial court and the reviewing court must construe the petition in favor of the complaining party. It is not necessary to decide whether a litigant will ultimately be entitled to any relief in order to hold that the party has standing to seek judicial redress for his/her grievance. The proper inquiry concerning standing is whether the plaintiff has in fact suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions. If he has not, standing does not exist, and the case must be dismissed. If standing exists, the case must proceed on the merits.

Glass, 639 P.2d at 1237 (note omitted).

The nature of a plaintiff's injury is one of the elements for proof necessary to obtain an injunction and also a standing requirement which may be challenged at the pleading stage. When testing the sufficiency of a petition the allegations of injury must state an infringement upon a legal interest possessed by the plaintiff and the threat of infringement must not be speculative or hypothetical. Glass, supra.

Â¶64 When a legal proceeding is brought for injunctive relief because of a public official's failure to comply with law, then the plaintiff must possess a legal interest or cause of action arising from this failure personal to the plaintiff and apart from the public generally, unless the legislature has expressly authorized the equitable remedy, such as an injunction to restrain an illegal tax and the plaintiff possesses standing as a taxpayer.[160] We have explained this rule in various ways. For example: (1) The Court has never approved of a general class of non-Hohfeldian[161] private parties who may bring public actions for the vindication of public rights and the correction of purely public wrongs of whatever nature;[162] (2) The plaintiff must possess a cause of action, a cognizable legal injury, at the time of the suit and this injury must be of such nature it warrants a remedy in equity;[163] and (3) Equity may be used to restrain public officials from threatened acts which are ultra vires and beyond the scope of their authority, or acts which are unlawful, when the acts of the official would cause irreparable injury or destroy rights of the complainant cognizable in equity.[164]

Â¶65 Farley's request for an injunction is based upon an allegation that the City has the proper policy of following NFPA standards, but is imperfectly implementing those standards with insufficient training for firemen required to rescue people from swift flowing flood waters. She alleges she needs an injunction to ensure she, as a citizen, will be rescued in a future flash flood. She does not allege any citizens of the City have suffered an injury because of this inadequate training. She alleges her husband, a fireman, died as a result of inadequate training before the City started training for rescues during flash floods. Farley is not a fireman receiving this allegedly inadequate training.

Â¶66 Farley's petition alleges flash flooding occurred at a certain location where her husband died. While she alleges her residence is "in a flood plain" she makes no allegations she has been in a flash flood and needed a swift water rescue. Her allegation that an injunction is necessary to protect the citizens of the City does not show an actual or threatened injury which will occur with a reasonable probability, but is in the nature of an alleged "public wrong" to the population in a general sense. We agree with the District Court that Farley failed to show standing to seek an injunction.

V. Conclusion

Â¶67 Plaintiff, a surviving spouse, successfully obtained a death benefits award in the Workers' Compensation Commission. She then brought a District Court action for damages alleging the death of her spouse was caused by negligence and an intentional tort committed by her spouse's employer who is a local government entity. She argued her action was also for the benefit of her surviving child, as well as the surviving parents and brother of the deceased. We conclude: (1) A tort action seeking damages for a surviving spouse, surviving child, and parents of a deceased adult child does not survive in a 12 O.S. Â§ 1053 wrongful death action when (a) an exclusive worker's compensation remedy for survivors is substituted for a wrongful death action, and (b) the decedent's employer possesses governmental tort claim sovereign immunity barring a tort action for damages at the time of decedent's death; (2) The brother of the deceased did not possess a section 1053 claim for loss of companionship; and (3) Plaintiff lacked standing to seek injunctive relief.

Â¶68 The wrongful death injury was adjudicated and compensated by a successful workers' compensation claim after the death of the decedent. This successful adjudication demonstrates the decedent's injury was exclusively before the Commission and not cognizable as a District Court claim at the time of decdent's death. The parents' claim for loss of companionship damages was extinguished at the time of decedent's death and did not survive. We affirm the District Court's dismissal of the petition with prejudice.

Â¶69 CONCUR: GURICH, C.J., DARBY, V.C.J., KAUGER, WINCHESTER, EDMONDSON, KANE, and ROWE, JJ.

Â¶70 DISSENT: COLBERT, J.

Â¶71 DISQUALIFIED: COMBS, J.

FOOTNOTES

[1] See Petition, at Count I, "negligence," and Count II "wrongful death", citing 12 O.S. Â§ 1053.

[2] Petition, at Â¶ 44.

[3] Gaasch, Estate of Gaasch v. St. Paul Fire and Marine Insurance Company, 2018 OK 12, Â¶ 18, 412 P.3d 1151, 1156 ("This single recovery by a plaintiff has been historically recognized by the Legislature in statute, and our Court has explained that an employer and insurance carrier have been protected from a claimant obtaining a 'double recovery' for the same injury.").

[4] 51 O.S. Â§ 155 (14): "The state or a political subdivision shall not be liable if a loss or claim results from: . . . 14. Any loss to any person covered by any workers' compensation act or any employer's liability act;"

[5] 51 O.S. Â§ 155 (6): "The state or a political subdivision shall not be liable if a loss or claim results from: . . . (6). Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection;"

[6] 11 O.S.2011 t 29-108:
"A municipal fire department answering any fire alarms or performing fire prevention services or rescue, resuscitation, first aid, inspection or any other official work outside the corporate limits of its municipality shall be considered an agent of the State of Oklahoma, and acting solely and alone in a governmental capacity. Said municipality shall not be liable in damages for any act of commission, omission, or negligence while answering or returning from any fire or reported fire or doing or performing any fire prevention work or rescue, resuscitation, first aid, inspection or any other official work."

[7] 51 O.S. Â§ 155 (5): "The state or a political subdivision shall not be liable if a loss or claim results from: . . .(5). Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees;"

[8] 51 O.S. Â§ 155 (4): "The state or a political subdivision shall not be liable if a loss or claim results from: . . .(4). Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;"

[9] 85A O.S.Supp.2014 Â§ 47 (C)(1) provides in part: ("Beneficiaries--Amounts. If an Injury or occupational illness causes death, weekly income benefits shall be payable as follows: (1) If there is a surviving spouse, a lump-sum payment of One Hundred Thousand Dollars ($100,000.00) and seventy percent (70%) of the lesser of the deceased employee's average weekly wage and the state average weekly wage.....").

[10] 85A O.S.Supp.2014 Â§ 47 (C)(2) (provides the formula for compensating a surviving minor child when there is also a surviving spouse).

[11] 85A O.S.Supp.2014 Â§ 47 (C)(5) ("The employer shall pay the actual funeral expenses, not exceeding the sum of Ten Thousand Dollars ($10,000.00)").

[12] Osage Nation v. Bd. of Commr's of Osage Cnty., 2017 OK 34, Â¶ 4, 394 P.3d 1224, 1229.

[13] The City relied on two federal court opinions: VanZandt v. Oklahoma, ex rel. Oklahoma Dept. of Human Services, 2006 WL 3361553 (W.D. Okla. 2006), (unpublished) and Tal v. Hogan, 453 F.3d. 1244 (10th Cir.2006).

[14] Young v. Station 27, Inc., 2017 OK 68, n. 10, 404 P.3d 829.

[15] Kaspersky Lab, Inc., United States Department of Homeland Security, 909 F.3d 446, 464 (D.C.Cir. 2018) citing Hurd v. District of Columbia, 864 F.3d 671, 686 (D.C. Cir. 2017) and Federal Rules of Evidence, Rule 201(b).

[16] 12 O.S. 2011 Â§ 2202:
A. This section governs only judicial notice of adjudicative facts.
B. A judicially noticed adjudicative fact shall not be subject to reasonable dispute in that it is either:
1. Generally known within the territorial jurisdiction of the trial court; or
2. Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
C. A court may take judicial notice, whether requested or not.
D. A court shall take judicial notice if requested by a party and supplied with the necessary information.
E. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

[17] O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1224 (10th Cir. 2007) ("Federal Rule of Evidence 201(b) states: 'A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'").

[18] O'Toole v. Northrop Grumman Corp., 499 F.3d at 1224-1225.

[19] U.S. v. Iverson, 818 F.3d 1015, 1022-1023 (10th Cir. 2016) (government records, statements, and reports are continually being placed on the internet to allow easy access to the general public). See also Bentley v. United of Omaha Life Insurance Company, 371 F.Supp.3d 723, 727 (C.D.Cal.2019); Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746, n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

[20] Fornalik v. Perryman, 223 F.3d 523, 529 (7th Cir. 2000) (discussing a court taking judicial notice of (1) official Immigration and Naturalization Service actions and Board of Immigration Appeals, (2) agency factfinding, and (3) agency and judicial decisions).

[21] Northstar Fin. Advisors Inc. v. Schwab Investments, 779 F.3d 1036, 1042 (9th Cir.) cert. denied, ___ U.S. ___, 136 S.Ct. 240, 193 L.Ed.2d 133 (2015) (on a motion to dismiss, courts are allowed to consider matters of public record); Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010). See also Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (court may consider on a motion to dismiss matters of public record).

[22] Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (court may take judicial notice of its records for the purpose of a res judicata defense raised by a motion to dismiss without requiring defendant to raise defense by answer); Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to summary judgment).

[23] Feightner v. Bank of Oklahoma, N.A., 2003 OK 20, Â¶ 3, 65 P.3d 624, 627 (application of preclusion doctrine may present either a question of law or a mixed question of law and fact depending upon the circumstances).

[24] 2012 OK 2, 270 P.3d 155.

[25] 11 O.S.2011 Â§ 29-108:
A municipal fire department answering any fire alarms or performing fire prevention services or rescue, resuscitation, first aid, inspection or any other official work outside the corporate limits of its municipality shall be considered an agent of the State of Oklahoma, and acting solely and alone in a governmental capacity. Said municipality shall not be liable in damages for any act of commission, omission, or negligence while answering or returning from any fire or reported fire or doing or performing any fire prevention work or rescue, resuscitation, first aid, inspection or any other official work.

[26] Shockey v. City of Oklahoma City, 1981 OK 94, 632 P.2d 406, 408 (discussing (1) the "general rule" prior to adoption of the Oklahoma Tort Claims Act which characterized the operation and maintenance of a municipal fire department as an exercise of a governmental function resulting in immunity from tort liability, and (2) the enactment of 11 O.S. Â§ 29-108 was a codification of the general rule).

[27] State of Oklahoma ex rel. State Insurance Fund v. JOA, Inc., 2003 OK 82, n. 5, 78 P.3d 534, 536.

[28] See, e.g., Grisham v. City of Oklahoma City, 2017 OK 69, Â¶ 7, 404 P.3d 843, 846-847 (a notice requirement in the OGTCA is a "mandatory prerequisite jurisdictional requirement to filing a tort claim for damages").

[29] I.T.K. v. Mounds Public Schools, 2019 OK 59, Â¶Â¶ 19-24, 451 P.3d 125, 135-137.

[30] See, e.g., Lassiter v. City of Moore, 1990 OK CIV APP 76, 802 P.2d 1292, 1293 (notice and filing provisions of Oklahoma Governmental Tort Claims Act are essential to the establishment to a cause of action and absent compliance therewith sovereign immunity applies and the action would fail to state a claim upon which relief can be granted pursuant to Â§ 2012(B)(6)) (published by order of the Court of Civil Appeals).

[31] See, e.g., Chandler v. Denton, 1987 OK 109, 747 P.2d 938, 942-943 (jurisdictional facts show the matter involved in the suit constitute a subject matter within the jurisdiction of the court); Abraham v. Homer, 1924 OK 393, 226 P. 45, 47-48 (1924) (quasi jurisdictional facts show non-jurisdictional conditions precedent to the right to proceed after the court has acquired jurisdiction, but a quasi jurisdictional fact which shows compliance with a mandatory requirement may become a jurisdictional fact necessary to the third element of jurisdiction, jurisdiction to render the particular judgment).

[32] Young v. Station 27, Inc., 2017 OK 68, Â¶ 8, 404 P.3d 829, 834.

[33] Cates v. Integris Health, Inc., 2018 OK 9, Â¶ 7, 412 P.3d 98, 101-102 (de novo appellate review of a District court's decision granting a motion to dismiss includes testing the law that governs the claim, and if judicial relief is possible under any set of facts that can be gleaned from the petition, then the motion to dismiss should be denied).

[34] Tal v. Hogan, 453 F.3d 1244, n. 24, 1264 (10th Cir. 2006).

[35] Record on Accelerated Appeal, No. 115,400, Tab 7, Tr. at pg. 3 (hearing on motion to dismiss).

[36] See, e.g., McClendon v. Slater, 1976 OK 112, 554 P.2d 774, 779 (Court noted a party made no objection to the Court taking judicial notice). Cf. U.S. v. Rodriguez-Berrios, 573 F.3d 55, 62-63 (1st Cir. 2009) (party could not raise on appeal the trial court erroneously took judicial notice of a document when the party failed to properly object in the trial court, and also explicitly withdrew a particular objection related to the judicial notice).

[37] Sheffer v. Buffalo Run Casino, PTE, Inc., 2013 OK 77, 315 P.3d 359.

[38] Roth v. Mercy Health Center, Inc., 2011 OK 2, Â¶ 14, 246 P.3d 1079, 1085.

[39] Hines v. Bacon, 1922 OK 176, 207 P. 93 (Syllabus by the Court); Douglas v. Douglas, 1936 OK 270, 56 P.2d 362 (same). See also Askins v. British-American Oil Producing Co., 1949 OK 45, 203 P.2d 877, 881 ("But the finding of the trial court was a general finding in favor of defendant, and in such case we have repeatedly held that where a judgment might have been based upon either of two or more grounds, but the specific ground was not pointed out, the judgment will not be disturbed upon appeal if supported on either ground); Maras v. Smith, 1966 OK 231, 420 P.2d 483, 484 ("In the absence of special findings by the trial court, pursuant to timely request therefor, indicating the facts found from the evidence and the law of the case applicable thereto, the judgment of the trial court will not be reversed on appeal if it can be sustained on any ground.").

[40] See, e.g., Bredouw v. Jones, 1966 OK 93, 431 P.2d 413, 420 (explaining the general rule of single-ground legal sufficiency in both "equity cases and law actions" does not apply when an erroneous and prejudicial instruction was considered by the jury).

[41] Hightower v. Glenn, 1947 OK 57, 179 P.2d 127 ("Where the trial court has sustained a motion to dismiss an action and the record on appeal does not reflect the exact theory advanced and adopted by the court, the dismissal will be sustained if correct under any theory presented in this court.") (Syllabus by the Court); City of Chandler v. Farley, 1959 OK 20, 338 P.2d 885 (appellate motion to dismiss an appeal raising several grounds was sustained when one of the grounds had merit); Niles v. Niles, 1947 OK 26, 177 P.2d 89 (same).

[42] Myers v. Lashley, 2002 OK 14, Â¶ 7, 44 P.3d 553, 557 ("When supported by the record, a legally correct nisi prius judgment must be affirmed although it was anchored to a theory different from that on which it comes to be tested on appellate review."), citing Akin v. Missouri Pacific R. Co., 1998 OK 102, Â¶ 35, 977 P.2d 1040, 1054; Bivins v. State ex rel. Oklahoma Memorial Hosp., 1996 OK 5, Â¶ 22, n. 40, 917 P.2d 456, 465, n. 40; Matter of Estate of Maheras, 1995 OK 40, Â¶ 7, 897 P.2d 268, 272 n. 6; Wright v. Grove Sun Newspaper Corp., Inc., 1994 OK 37, Â¶ 18, 873 P.2d 983, 992.

[43] Osage Nation v. Bd. of Commr's of Osage Cnty., 2017 OK 34, Â¶ 17, 394 P.3d 1224, 1233 ("this appeal is prosecuted pursuant to Rule 1.36 which provides for the trial court filings to serve as the briefs on appeal"); Shero v. Grand Sav. Bank, 2007 OK 24, Â¶ 4, 161 P.3d 298, 300 (the Supreme Court's determination of a motion for both oral argument and additional briefing is based upon the parties' briefs filed in the District Court and "the law cited therein" when the motion for appellate argument and briefing is filed in an appeal from an District Court order granting a motion to dismiss and governed by Okla. Sup. Ct. R., Rule 1.36).

[44] In re Assessment of Personal Property Taxes Against Missouri Gas Energy, etc., 2008 OK 94, n. 85, 234 P.3d 938, 960 ("A successful party below who does not bring an appeal, counter-, or cross-appeal may, as appellee, press only those errors which, if rectified, would support the correctness of the trial court's judgment ... Such a party is restricted to the defense of the relief it was granted below.") (citation omitted).

[45] In re M.K.T., 2016 OK 4, Â¶ 88, 368 P.3d 771, 799 (appellee's legal issues in support of a District Court's judgment or decree and which are presented in an appellate answer brief are limited in scope by their application to those facts shown in the certified record on appeal).

[46] 1979 OK 71, 595 P.2d 435.

[47] 2003 OK 30, 66 P.3d 442.

[48] 2013 OK 88, 313 P.3d 917.

[49] Holley, 2013 OK 88, Â¶ 8, 313 P.3d 917, 923-924.

[50] Hines v. Superior Court of Okmulgee County, 1967 OK 188, 435 P.2d 149, 151 ("Under the doctrine of election of remedies there can be no bar to later litigation of the same subject matter unless two or more remedies for the same claim do in fact co-exist.") citing Young v. Seely, 1961 OK 302, 366 P.2d 951.

[51] The common-law doctrine of election of remedies became an anachronism for District Court practice when the Oklahoma Pleading Code with its notice-pleading standard became effective in 1984. Howell v. James, 1991 OK 47, 818 P.2d 444, 466-448. The new notice-pleading standard did not authorize either double recovery for the same cause of action or inconsistent judgments. Howell, 818 P.2d at 447. See also Great Plains Fed. Sav. And Loan Ass'n v. Dabney, 1993 OK 4, n. 3, 846 P.2d 1088, 1094 (Opala, J., concurring and joined by Kauger, J.) (explaining same principles and citing Howell).

[52] 1993 OK 114, 861 P.2d 295.

[53] Dyke, 861 P.2d at 302.

[54] Claim preclusion, or res judicata at common law, prevents a party in a second suit between the same parties, or their privies, from relitigating an adjudicated claim as well as issues of fact or law necessary to the previous final judgment on the merits, or relitigating those issues which could have been decided in the previous suit. State ex rel. Tal v. City of Oklahoma City, 2002 OK 97, Â¶ 20, 61 P.3d 234, 245; Wilson v. State ex. rel. State Election Bd., 2012 OK 2, Â¶ 9, 270 P.3d 155, 158. Issue preclusion, or collateral estoppel at common law, prevents relitigation of an issue in a second suit on a different claim. Oklahoma Dept. of Public Safety v. McCrady, 2007 OK 39, Â¶ 7, 176 P.3d 1194, 1199. See also Miller v. Miller, 1998 OK 24, Â¶Â¶ 22-23, 956 P.2d 887, 896 (claim preclusion and issue preclusion are distinct doctrines but often used interchangeably and imprecisely).

[55] Differences in the descriptions for workers' compensation and common-law tort claims are well-known. For example, a workers' compensation claim includes (1) accidental injury, (2) occurring in the course of, and (3) arising out of, the employment with (4) statutorily-required proof of damages, and (5) statutorily determined compensation. See, e.g., Continental Cas. Co., 2006 OK 36, Â¶ 21, 142 P.3d 147, 152 (discussing accidental injury arising out of and in course of employment); Texas Oklahoma Exp. v. Sorenson, 1982 OK 113, 652 P.2d 285, 290 (differences in proof of quantum of compensatory damages for workers' compensation noted); Hill v. American Medical Response, 2018 OK 57, 423 P.3d 1119 (AMA Guides to the Evaluation of Permanent Impairment used for specific claims). Compare, Brigance v. Velvet Dove Restaurant, Inc., 1986 OK 41, 725 P.2d 300, 306 (noting well-known elements of a negligence cause of action, i.e., duty, breach, causation, and damages).

[56] 1933 OK 256, 21 P.2d 489.

[57] A collateral attack is an attempt to avoid, defeat, evade or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial. Nilsen v. Ports of Call Oil Co., 1985 OK 104, 711 P.2d 98, 101. A direct attack is one authorized by law. In re Hess' Estate, 1962 OK 74, 379 P.2d 851, 853.

[58] Howard v. Duncan, 21 P.2d at 492.

[59] Consolidated Mtr. Frt. Terminal v. Vineyard, 1943 OK 358, 143 P.2d 610, 612.

[60] State ex rel. Dept. of Transp. v. Little, 2004 OK 74, n. 48, 100 P.3d 707, 719.

[61] 85A O.S.Supp. 2014 Â§ 5(A) states in part: "The rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer, or any principal, officer, director, employee, stockholder, partner, or prime contractor of the employer on account of injury, illness, or death."

[62] Maxwell v. Sprint PCS, 2016 OK 41, Â¶ 25, 369 P.3d 1079, 1092.

[63] Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, Â¶Â¶ 8-9, 371 P.3d 477, 481-482.

[64] Bowling v. Blackwell Zinc Co., 1959 OK 263, 347 P.2d 1024, 1026-1027.

[65] Stiles v. Oklahoma Tax Commission, 1987 OK 85, nn. 5-6, 752 P.2d 800, 802 ("Whether an injury does arise out of and in the course of a claimant's employment is an issue of fact to be determined by the Workers' Compensation Court") citing Thomas v. Keith Hensel Optical Labs, 1982 OK 120, 653 P.2d 201; Pearl v. Associated Milk Producers, 1978 OK 105, 581 P.2d 894. See Pina v. American Piping Inspection, Inc., 2018 OK 40, Â¶ 15, 419 P.3d 231, 236 (in a workers' compensation original proceeding before the Supreme Court, a form of direct statutory review, an order will not be vacated if the record contains substantial evidence in support of the facts upon which the order is based, and when no dispute as to facts is present the parties" have presented an issue of law); Yzer, Inc. v. Rodr, 2012 OK 50, Â¶ 3, 280 P.3d 323, 325 (in a workers' compensation original proceeding before the Supreme Court, a form of direct statutory review, the Court's review of a compensation award will include an independent review of a conclusion of law stating an accidental injury arose out of and in the course of employment).

[66] Video Independent Theatres, Inc. v. Woodson, 1972 OK 163, 505 P.2d 482, (Court explained principle in the context of denying a petition for a writ of prohibition seeking to stop a District Court action for damages alleging personal injury).

We need not explain in this proceeding the types of findings by the State Industrial Court/Commission which could be sufficient, or not, to bar or stay a subsequent or pending District Court action, or when the pursuit of remedy in a particular forum could be used to either bar or stay a proceeding in a different forum.

[67] Tibbetts v. Sight 'n Sound Appliance Centers, Inc., 2003 OK 72, Â¶ 18, 77 P.3d 1042, 1061 ("The preclusion doctrine is applicable whether the contested issues in the case in which it is invoked were rightly or wrongly decided.").

[68] Mullendore v. Mercy Hospital Ardmore, 2019 OK 11, Â¶ 11, 438 P.3d 358, 363 ("The law in effect at the time of the injury controls both the award of benefits and the appellate standard of review.").

[69] See Roach v. Jimmy D. Enterprises, Ltd., 1996 OK 26, 912 P.2d 852, 854-855, quoting Thomas v. Cumberland Operating Co., 1977 OK 164, 569 P.2d 974, 976-977 at note 108, infra, and accompanying text.

[70] 85A O.S.Supp.2014 Â§ 2 (9)(a) defines a "Compensable injury" as damage or harm to the physical structure of the body, or damage or harm to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, of which the major cause is either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment. Section 2(9)(a)(1) defines an accident as unintended, unanticipated, unforeseen, unplanned, and unexpected.

[71] See, e.g., Roberts v. Barclay, 1962 OK 38, 369 P.2d 808, 809 (worker's compensation applied only to disability or death resulting from accidental injuries, and conclusory allegations employer acted "wilfully and knowingly" without facts giving rise to such inference were insufficient to show plaintiff's fall from a scaffold was anything other than an accidental injury arising out of and in the course of employment with an exclusive worker's compensation remedy).

[72] 2019 OK 45, 457 P.3d 1020.

[73] 85A O.S.Supp.2014 Â§ 3 states in part: "A. Every employer and every employee, unless otherwise specifically provided in this act, shall be subject and bound to the provisions of the Administrative Workers' Compensation Act . . . B. This act shall apply only to claims for injuries and death based on accidents which occur on or after the effective date of this act."

[74] 85A O.S.Supp.2014 Â§ 2(9)(a) stated in part: "'Compensable injury' means damage or harm to the physical structure of the body . . . solely as the result of ether an accident, cumulative trauma or occupational disease arising out of the course and scope of employment...."

[75] 85A O.S.Supp.2014 Â§ 5(B)(2) (the exclusive liability pursuant to the workers' compensation statutes does not apply if the injury is the result of an intentional tort caused by the employer).

[76] Read v. Read, 2001 OK 87, Â¶ 16, 57 P.3d 561, 567-568.

[77] State ex rel. Dept. of Transportation v. Little, 2004 OK 74, nn. 47-48, 100 P.3d 707, 718--719.

[78] H. L. Hutton & Co. v. District Court of Kay County, 1965 OK 9, 398 P.2d 530, 534 ("This court has consistently held that a finding of fact by the State Industrial Court determining its jurisdiction, unappealed and final, is res judicata as to such fact, and the same question cannot be again adjudicated between the parties in any further proceeding before the State Industrial Court or in any subsequent action or proceeding in any other court.").

[79] Miller v. Miller, 1998 OK 24, Â¶ 24, 956 P.2d 887, 897.

[80] Roberts v. Barclay, 1962 OK 38, 369 P.2d 808, 809, 811 (Workmen's Compensation Law by its terms applies only to disability or death resulting from accidental injuries; and while it may be conceded that an employee who has been wilfully injured by his or her employer has a common law action for damages, an employer's demurrer to an employee's petition in District Court should be sustained and judgment entered for employer when the petition contains only allegations of simple negligence); Adams v. Iten Biscuit Co., 1917 OK 47, 162 P. 938, 945 (1915 Workmen's Compensation Law provided an employee for a injury whether occurring from the negligence of the employer or not arising out of and in the course of employment, but did not include willful or intentional injuries inflicted by the employer).

[81] Weber v. Armco, Inc., 1983 OK 53, 663 P.2d 1221, 1225 (The dual-capacity doctrine applied to former workers' compensation statutes stated an employer who was generally immune from tort liability might become liable to its employee as a third-party tortfeasor; if the employer possessed, in addition to its capacity as an employer, a second capacity that conferred upon the employer legal obligations independent of those imposed upon the employer as an employer.).

[82] Odom v. Penske Truck Leasing Co., 2018 OK 23, Â¶ 14, 415 P.3d 521, 527 ("The plain language of 85A O.S.Supp.2013 Â§ 5 unambiguously abrogates the dual-capacity doctrine with regard to employers as defined by the AWCA."); Braitsch v. City of Tulsa, 2018 OK 100, n. 5, 436 P.3d 14, 21 (the Administrative Workers' Compensation Act, AWCA, repealed and replaced the provisions of the Workers' Compensation Code effective February 1, 2014); Lind v. Barnes Tag Agency, Inc., 2018 OK 35, n. 5, 418 P.3d 698, 706 (Wyrick, J., concurring) (dual-capacity doctrine was superseded by statute, 85 A O.S.Supp.2013 Â§ 5(A), as recognized in Odom).

[83] As explained herein our opinions have historically held a workers' compensation order awarding a benefit for an injury acts to preclude or bar a subsequent District Court tort action for the same injury. We have applied this concept to a plaintiff invoking a dual capacity doctrine justification for pursuing a District Court action. Price v. Howard, 2010 OK 26, n. 5, 236 P.3d 82, ("The dual persona doctrine does not sanction multiple recovery through two remedies for the same harm."), citing Dyke v. Saint Francis Hosp., Inc., 1993 OK 114, 861 P.2d 295, 302.

[84] Weber v. Armco, Inc., 1983 OK 53, 663 P.2d at 1226.

[85] Weber v. Armco, Inc., 1983 OK 53, 663 P.2d at 1226.

[86] Crowder v. Continental Materials Co., 1979 OK 12, 590 P.2d 201 (the employee's remedy was pursuant to workers' compensation when various acts of negligence including a failure to provide safe place in which to work and creation of a hidden danger were alleged).

[87] Roberts v. Barclay, supra, at notes 71 and 80, and Adams v. Iten Biscuit Co., supra, at note 80.

[88] Davis v. CMS Continental Natural Gas, Inc., 2001 OK 33, Â¶Â¶ 6-8, 23 P.3d 288,

[89] Lind v. Barnes Tag Agency, Inc., 2018 OK 35, Â¶ 10, 418 P.3d 698, 701 ("The trial court's grant of summary judgment in favor of BTA, as Decedent's employer, was proper pursuant to the exclusive remedy provisions of 85 O.S. Supp. 2006 Â§ 12").

[90] 12 O.S.2011 Â§ 1051:
In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same.

[91] 12 O.S.2011 Â§ 1053:
A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission. The action must be commenced within two (2) years.

B. The damages recoverable in actions for wrongful death as provided in this section shall include the following: Medical and burial expenses, which shall be distributed to the person or governmental agency as defined in Section 5051.1 of Title 63 of the Oklahoma Statutes who paid these expenses, or to the decedent's estate if paid by the estate.

The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse.

The mental pain and anguish suffered by the decedent, which shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.

The pecuniary loss to the survivors based upon properly admissible evidence with regard thereto including, but not limited to, the age, occupation, earning capacity, health habits, and probable duration of the decedent's life, which must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin, and shall be distributed to them according to their pecuniary loss.

The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship.

C. In proper cases, as provided by Section 9.1 of Title 23 of the Oklahoma Statutes, punitive or exemplary damages may also be recovered against the person proximately causing the wrongful death or the person's representative if such person is deceased. Such damages, if recovered, shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.

D. Where the recovery is to be distributed according to a person's pecuniary loss or loss of companionship, the judge shall determine the proper division.

E. The above-mentioned distributions shall be made after the payment of legal expenses and costs of the action.

F. 1. The provisions of this section shall also be available for the death of an unborn child as defined in Section 1-730 of Title 63 of the Oklahoma Statutes.

2. The provisions of this subsection shall not apply to:

a. acts which cause the death of an unborn child if those acts were committed during a legal abortion to which the pregnant woman consented, or

b. acts which are committed pursuant to the usual and customary standards of medical practice during diagnostic testing or therapeutic treatment.

3. Under no circumstances shall the mother of the unborn child be found liable for causing the death of the unborn child unless the mother has committed a crime that caused the death of the unborn child.

[92] Deep Rock Oil Corp. v. Sheridan, 173 F.2d 186 (10th Cir. 1949) (a 1051 action was brought by surviving spouse as administratrix of the estate alleging pain, agony, and mental suffering by deceased prior to his death, and the trial court adjudicated evidence was insufficient to show employer caused the injury; and when the second action was brought pursuant to 1053 for the benefit of spouse and children the appellate court concluded summary judgment for employer was proper due to the estoppel effect of first proceeding).

[93] 12 O.S.1971 Â§ 1053:
When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; to be distributed in the same manner as personal property of the deceased.

[94] Rogers v. Worthan, 1970 OK 22, 465 P.2d 431, 438 ("It is well settled that an action for damages for wrongful death is purely statutory, and that, in such an action, the damages are limited to the pecuniary benefits lost, through the death, by those specified in the statute. . . In an action by a parent for the wrongful death of a child, the loss is determined by the sums of money and the acts and services of a pecuniary value which the child probably would have contributed to the parent during the lifetime of the latter except for the wrongful death.").

[95] Gaither By and Through Chalfin v. City of Tulsa, 1983 OK 61, 664 P.2d 1026, 1030. Compare Shawnee Gas & Elec. Co. v. Motesenbocker, 1913 OK 481, 138 P. 790, 793 (parent could recover damages for loss of services due to injury to the child); Adams Hotel Co. v. Cobb, 1899 IT 78, 53 S.W. 478 (same).

[96] 1978 Okla. Sess. Laws Ch. 106, Â§ 1 (eff. Oct. 1, 1978).

[97] 1979 Okla. Sess. Laws, Ch. 235, Â§ 1 (eff. Oct. 1, 1979).

[98] 12 O.S.Supp. 1979 Â§ 1053 (B) states in part:
(B) The damages recoverable in actions for wrongful death as provided in this section shall include the following: . . . The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse. . . The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship.

[99] 1983 OK 10, 658 P.2d 1147.

[100] Clark v. Jones, 658 P.2d at 1149. See also Superior Supply Co. Inc. v. Torres, 1995 OK CIV APP 18, 900 P.2d 1005, 1008 (released for publication by order of the Court of Civil Appeals) (observing the Legislature amended Â§ 1053 in 1979 by adding loss of consortium and grief of a surviving spouse and loss of companionship and grief of the children and parents of the decedent as recoverable damages).

[101] 1983 OK 61, 664 P.2d 1026.

[102] Gaither, 664 P.2d at 1030.

[103] 1977 OK 164, 569 P.2d 974.

[104] 12 O.S.2011 Â§ 1055:
In all actions hereinafter brought to recover damages for the death of an unmarried, unemancipated minor child, the damages recoverable shall include medical and burial expense, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in support, maintenance and education of such minor child, in such amount as, under all circumstances of the case, may be just.

[105] Thomas, 569 P.2d at 977 (section 1055 was not procedural and created new substantive rights). See also Majors v. Good, 1992 OK 76, 832 P.2d 420 (statutory increases or restrictions on the amount of recoverable damages are changes in substantive rights that must be applied prospectively only).

[106] 1996 OK 26, 912 P.2d 852.

[107] Roach, 912 P.2d at 855-856 (explaining punitive damages were not recoverable in cases involving wrongful death of a child prior to the Legislature amending the wrongful death statutes, and the wrongful death statutes should be read together as a consistent whole).

[108] Roach, 912 P.2d at 854-855, quoting Thomas v. Cumberland Operating Co., 569 P.2d at 976-977.

[109] 1994 OK 79, 918 P.2d 1363.

[110] Weeks v. Cessna Aircraft Co., 1994 OK CIV APP 171, 895 P.2d 731, 734 (approved for publication by the Supreme Court)

[111] See Ouellette v. State Farm Mut. Auto. Ins. Co., 1994 OK 79, 918 P.2d 1363, 1366-1367, and Murg v. Barnsdall Nursing Home, 2005 OK 74, n. 4, 123 P.3d 11, 16, at note 122 infra.

[112] Gaasch, Estate of Gaasch v. St. Paul Fire and Marine Insurance Company, 2018 OK 12, n. 11, 412 P.3d 1151 ("Oklahoma's Wrongful Death Act created a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of decedent's death."). See also Clark v. Jones, supra, and Ouellette v. State Farm Mut. Auto. Ins. Co., supra.

[113] 1992 OK 114, 836 P.2d 1298.

[114] 1972 OK 146, 503 P.2d 871.

[115] 1967 OK 10, 424 P.2d 35.

[116] 2014 OK 80, 336 P.3d 468.

[117] Boler, 2014 OK 80, Â¶ 11, 336 P.3d at 472 ("The claim is derivative only in the sense that it must not have been extinguished before death.").

[118] Due to our holding we need not further analyze the scope of derivative or independent attributes for either a wrongful death action and damages or loss of consortium damages in various actions. Compare, Laws v. Fisher, 1973 OK 69, 513 P.2d 876, 878 (loss to husband of spousal services was based on derivative damages arising from an injury to his wife, and derivative claim was barred by wife's previous unsuccessful suit); and Carroll J. Miller, Annotation, Injured Party's Release of Tortfeasor as Barring Spouse's Action for Loss of Consortium, 29 A.L.R.4th 1200, 1201 (1984) ("more prevalent view seems to be that the loss of consortium suit is not barred as it is a separate and independent cause of action which is the property of the spouse and cannot be controlled by the injured person"); Beaver v. Grand Prix Karting Ass'n, Inc., 246 F.3d 905, 911 (7th Cir. 2001) (quoting Miller).

[119] Gaither By and Through Chalfin v. City of Tulsa, 1983 OK 61, 664 P.2d 1026, 1030.

[120] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, Â¶ 9, 326 P.3d 496, 501 (The primary goal in reviewing a statute is to ascertain legislative intent, if possible, from a reading of the statutory language in its plain and ordinary meaning.); Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Bd., 2007 OK 21, Â¶ 6, 158 P.3d 461, 464 (statutes are afforded a reasonable and sensible construction in a manner consistent with other statutes); St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, 782 P.2d 915, 918 (when construing statutes we give effect to the express intention of the legislature).

[121] Rios v. Nicor Drilling, 1983 OK 74, 665 P.2d 1183, 1186 (any common-law tort claim which decedent might have had against decedent's employer was precluded by the exclusive remedy provided by the Workers' Compensation Act, and the right of action for loss of consortium by decedent's wife was also barred). Accord, Harrington v. Certified Systems, Inc., 2001 OK CIV APP 53, Â¶ 36, 45 P.3d 430, 436 (released for publication by order of the Court of Civil Appeals) (injured employee's exclusive remedy for the injury in question was under the Workers' Compensation Act and defendants possessed immunity from any other liability, including a claim for loss of consortium by the injured employee's wife).

[122] See, e.g., Ouellette v. State Farm Mut. Auto. Ins. Co., 1994 OK 79, 918 P.2d 1363, 1366-1367 (the term "next of kin" in Â§ 1053 includes those entitled to share in the distribution of the personal property of the deceased, and a particular party's next-of-kin status must be determined by 84 O.S. Â§ 213); Murg v. Barnsdall Nursing Home, 2005 OK 74, n. 4, 123 P.3d 11, 16 (next of kin in wrongful death statutes refers to those entitled to distribution of decedent's estate); Wallace v. State Indus. Ct., 1965 OK 134, 406 P.2d 488, 490 (explaining Capitol Steel Iron Co. v. Fuller, 1952 OK 209, 245 P.2d 1134, and Okla. Const. Art 23, Â§ 7, and stating any provision in the Workmen's Compensation Act which modifies the provisions of 12 O.S. 1053 and 1054, except to provide an amount of compensation under the Act for death resulting from injuries suffered in employment, is void); Stark v. Watson, 1961 OK 17, 359 P.2d 191, 193 (to participate in the compensation award the party must not only be an heir at law of decedent as defined by the descent and distribution statutes, but also a dependent as defined by the Workmen's Compensation Act).

[123] Roberts v. Merrill, 1963 OK 250, 386 P.2d 780, 783 (workers' compensation exclusive remedy for an employee's death is "a substituted remedy" for the wrongful death statute); Tatum v. Tatum, 1982 OK 62, n. 15, 736 P.2d 506, 510 (legislative power to fashion a substituted workers' compensation remedy for wrongful death is derived from the 1950 amendment to Okla. Const. Art. 23 Â§ 7).

[124] 2018 OK 12, 412 P.3d 1151.

[125] 2018 OK 12, at Â¶Â¶ 28-31, 412 P.3d at 1158-1160.

[126] 2005 OK 54, 127 P.3d 572.

[127] 2019 OK 45, 457 P.3d 1020.

[128] Wells, 2019 OK 45, at Â¶Â¶ 8, 17, 19, 23-24.

[129] There are three statutory degrees of negligence in Oklahoma, slight, ordinary, and gross. See 25 O.S.2011 Â§ 5 ("There are three degrees of negligence, namely, slight, ordinary and gross. The latter includes the former."); 25 O.S.2011 Â§ 6 ("Slight negligence consists in the want of great care and diligence; ordinary negligence in the want of ordinary care and diligence; and gross negligence in the want of slight care and diligence.").

[130] Walston v. Boeing Co., 181 Wash.2d 391, Â¶ 26, 334 P.3d 519, 525 (2014) ("The gradations of tortious conduct can best be understood as a continuum.") citing Woodson v. Rowland, 329 N.C. 330, 341-42, 407 S.E.2d 222 (1991) (discussing the Restatement (Second) of Torts Â§ 8A & cmt. b (1965) and W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts Â§ 8, at 35 (5th ed.1984).

[131] Andrew v. Depani-Sparkes, 2017 OK 42, n. 19, 396 P.3d 210, discussing Retherford v. Halliburton Co., 1977 OK 178, 572 P.2d 966, 968-969; Rodgers v. Higgins, 1993 OK 45, 871 P.2d 398, 402-403.

[132] Brigance v. Velvet Dove Restaurant, 1988 OK 68, 756 P.2d 1232, 1233-1234. See also Hoyt v. Paul R. Miller, M.D., Inc., 1996 OK 80, 921 P.2d 350, 355-356 (discussing the single injury rule for defining a single cause of action and how this common-law definition is applied in the context of a statute controlling contribution among tortfeasors and 12 O.S. Â§ 832).

[133] 1913 OK 481, 138 P. 790.

[134] Weavel v. U.S. Fidelity & Guar. Co., 1992 OK CIV APP 177, 852 P.2d 783 (approved for publication by order of the Court of Civil Appeals).

[135] Weeks v. Cessna Aircraft Co., 1994 OK CIV APP 171, 895 P.2d 731 (approved for publication by Supreme Court) explained in Roth v. Mercy Health Center, Inc., 2011 OK 2, Â¶Â¶ 15-20, 246 P.3d 1079.

[136] Abel v. Tisdale, 1980 OK 61, 619 P.2d 608, 609-610.

[137] Carris v. John R. Thomas & Assocs., P.C., 1995 OK 33, 896 P.2d 522, 530, citing Wilson v. Kane, 1993 OK 65, 852 P.2d 717, 720, and Restatement (Second) of Judgments Â§ 26 (1982) (exceptions to the General Rule Concerning Splitting [Claims] include at Â§ 26(c):"The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief....").

[138] Dyke v. Saint Francis Hosp., Inc., 1993 OK 114, 861 P.2d 295, 302 ("Under the teachings of Pryse Monument Co. v. District Court an employee who has two remedies for the same injury and has prosecuted one of them to conclusion (securing an award or judgment), is barred from resort to the other remedy. This rule, which in essence erects a res judicata bar, is applicable to compensation claimants who may also press a tort remedy.").

[139] 2004 OK 5, 85 P.3d 817.

[140] Teeter, 2004 OK 5, Â¶Â¶ 11-14, 85 P.3d 817, 821-822 (after city made the discretionary act to create a crosswalk and painted lines for this purpose it was required to maintain the crosswalk pavement markings, but the city was not liable for the discretionary act or for its failure to install additional warning signs or devices).

[141] Gowens v. Barstow, 2015 OK 85, Â¶ 12, 364 P.3d 644, 649-650.

[142] Moran v. City of Del City, 2003 OK 57, Â¶ 6, 77 P.3d 588, 590.

[143] 1994 OK 61, 875 P.2d 1147.

[144] 1994 OK 61, 875 P.2d at 1148--1149.

[145] 2003 OK 30, 66 P.3d 442.

[146] 2003 OK 30, Â¶ 13, 66 P.3d at 449.

[147] Gladstone, 2003 OK 30, n. 9, 66 P.3d at 445, explaining Maltsberger v. Board of County Comm'rs, 1999 OK CIV APP 79, 987 P.2d 437 (affirming summary judgment for county in OGTCA action when postal employee suffered an injury from a collapsed bridge, and had pursued a remedy under Federal Employees Compensation Act but had failed to recover due to insufficient medical evidence).

[148] Moran v. Del City, 2003 OK 57, 77 P.3d 588 (an "inspection power or function" exemption cannot include becoming aware of circumstances in a general sense without also bringing many types of negligence actions permitted by the OGTCA within the class of exempted claims causing a result contrary to the OGTCA).

[149] Barrios v. Haskell County Public Facilities Authority, 2018 OK 90, Â¶ 8, 432 P.3d 233, 237.

[150] Pellegrino v. State ex rel. Cameron Univ. etc., 2003 OK 2, Â¶ 16, 63 P.3d 535, 540.

[151] Osage Nation v. Bd. of Commr's of Osage Cnty., 2017 OK 34, nn. 55-56, 394 P.3d 1224, 1240 citing Peck v. State ex rel. Department of Highways, 1960 OK 89, 350 P.2d 948, 950; Saxon v. Macy, 1990 OK 60, 795 P.2d 101; Garner v. City of Tulsa, 1982 OK 104, 651 P.2d 1325.

[152] Renewable Fuels Ass'n v. U. S. Environmental Protection Agency, 948 F.3d 1206, 1231 (10th Cir. 2020) quoting Spokeo, Inc. v. Robins, 578 U.S. ___, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016).

[153] Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 184-185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), explaining Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)

[154] Clapper v. Amnesty Intern. USA, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).

[155] Clapper, 568 U.S. at 409.

[156] Clapper, 568 U.S. at 409.

[157] Dowell v. Pletcher, 2013 OK 50, Â¶ 7, 304 P.3d 457, 460; Sharp v. 251st Street Landfill, Inc., 1996 OK 109, 925 P.2d 546, 549.

[158] Stephens v. Borgman, 1949 OK 166, 210 P.2d 176, 178.

[159] 1982 OK 2, 639 P.2d 1233.

[160] Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, Â¶ 25, 270 P.3d 113, 125- 126 (discussing equitable remedy provided by 12 O.S.Â§ 1397). Stevens v. Fox, 2016 OK 106, Â¶ 15, 383 P.3d 269, 275, citing Thomas v. Henry, 2011 OK 53, Â¶ 6, 260 P.3d 1251 (In order to have taxpayer standing we have held "a taxpayer possesses standing to seek equitable relief when alleging that violation of a statute will result in illegal expenditure of public funds.").

[161] A non-Hohfeldian plaintiff sues to secure judicial relief that would benefit the plaintiff as a member of the community as a whole. Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, n. 47, 270 P.3d 113, 126. A Hohfeldian plaintiff seeks a judicial determination that the plaintiff possesses "a right, a privilege, an immunity or a power" vis-a-vis the opposite party in litigation. Id.

[162] State ex rel. Okla. Bar Ass'n v. Mothershed, 2011 OK 84, Â¶ 82, 264 P.3d 1197, 1228.

[163] Powell Briscoe, Inc. v. Peters, 1954 OK 107, 269 P.2d 787, 791, quoting Sunray Oil Co. v. Cortez Oil Co., 1941 OK 77, 112 P.2d 792 ("An injunction will not issue to protect a right not in esse and which may never arise, or to restrain an act which does not give rise to a cause of action").

[164] Stephens v. Borgman, 1949 OK 166, 210 P.2d 176, 178 (quoting a legal encyclopedia).